OBERHOLSER & KEEFER *et al.*, plaintiffs in error, *vs.* D. GREENFIELD *et al.*, defendants in error.

1. As a general rule, a Court of equity will not interfere at the instance of a general creditor before judgment, to set aside a conveyance of property alleged to have been made for the purpose of defrauding creditors, and to restrain by injunction and the appointment of a receiver the further disposition of the same. (R.)

2. It would require a very strong case to authorize the Supreme Court to control and set aside the judgment of the Chancellor granting or refusing an injunction. (R.)

Injunction. Receiver. Before Judge STROZIER. Dougherty county. At Chambers. January 20th, 1873.

Oberholser & Keefer and William C. Browning & Company in behalf of themselves and all other creditors of William Russack, filed their bill against D. Greenfield and Julius Vossen, containing, substantially, the following allegations, to-wit:

That in September, 1872, they sold to said Russack, a merchant in the city of Albany, in said county, a lot of merchandise, the bill of Browning & Company amounting to $754 91, for which he gave his note at four months; the bill of Oberholser & Keefer amounting to $1,454 36, for which he gave his note at three months, a *complete* schedule of which merchandise is in possession of said Russack, a copy of which will be attached as soon as it is in the power of complainants so to do; that Russack purchased goods from other merchants to the amount of about $15,000 00; that at the time of the purchase, said Russack represented that said goods were to be retailed by him in the city of Albany; that he was permanently established, intending to carry on there a large retail trade; that he had considerable means and would have no difficulty in meeting all of his payments out of the proceeds of his said sales and other means owned by him; that complainants relying upon these representations extended to him the credit as aforesaid; that Russack took said goods and placed them in his store in Albany, and commenced to carry

on a regular retail trade; that just before the maturity of said notes, for the purpose of defrauding complainants, he made a sham and fraudulent conveyance of all of said stock to divers persons and fled the country; that about $4,000 00 · worth of said stock of goods, embracing a large portion of the merchandise sold by complainants, was placed in the possession of the defendants, Greenfield and Vossen, for no consideration whatever; that if they advanced any money on said goods, it was fraudulently done, and no title was thereby passed; that said defendants knew that Russack was not a wholesale but a retail merchant; that the stock of goods was not paid for, and that his purpose in selling was to avoid the payment of his debts; that the defendant, Greenfield, acting as his friend, furnished him with money to enable him to run away, and to avoid the pursuit of his creditors, and he, the said defendant, took possession of said goods, and now holds the same, covered up in the name of the defendant, Julius Vossen, his brother-in-law and clerk; that 'the defendant, Greenfield, had been engaged for several months past in closing out his stock of goods preparatory, as alleged by him, to leaving Albany., and had so far succeeded in reducing his stock as to have on hand but few articles of much value; that said defendant has mixed the same with the goods so illegally and fraudulently received by him from said Russack, so that complainants are unable to identify precisely the goods sold by them, the consequences of which inability should be visited upon said defendant, as resulting from his fraudulent conduct; that said defendants have no visible property that can be reached by ordinary process of law, but are journeying tradesmen of doubtful solvency, of sharp practices and deceitful combinations; that complainants believe they will be remediless and will lose their debts unless said stock of goods be taken out of the possession of said defendants; that they are now engaged in selling the same for just such sums in cash as they can obtain, and they believe that the sums so received will be spirited away to said Russack or converted to their own use, to the injury of complainants; that complainants

waive all discovery. Prayer, that said defendants be decreed to be trustees for complainants and the other creditors of Russack as to the merchandise received from him; that some fit and proper person be appointed receiver to take charge of the whole of said stock, and to dispose of the same for cash, with which to meet the claims of complainants; that the defendants be enjoined from paying any money to said Russack, and from interfering with the stock of goods, wares and merchandise hereinbefore stated.

Complainants subsequently amended their bill, substantially, as follows, to-wit:

Complainants charge that said William Russack bought all of said goods from complainants and his other creditors in New York, with the express purpose and design of committing a fraud upon his said creditors by disposing of said goods at much less than their real value, and converting the proceeds thereof to his own use; that said sale was afterwards made by said Russack, in pursuance of his said original design, and that he received on said sale the sum of $4,000 00, or other large sum; that, immediately after said sale was effected, said Russack left clandestinely and secretly for parts unknown, and without the jurisdiction of this Court, so that he could not be made a party defendant to complainants' original bill, but he has since been brought back by legal process, and complainants desire to make him a party defendant; that said Russack is insolvent. Prayer, that he may be restrained from paying out to any person the money he may have received for the stock of goods sold as aforesaid; that the writ of subpœna may issue.

The defendants filed separate answers to the bill, in each of which every material allegation was denied; the purchase of the goods by the defendant, Vossen, was admitted, but was alleged to have been made for the sum of $4,000 00, paid in cash to Russack, and without notice of any of the circumstances under which he obtained said merchandise, and of whether it had been paid for or not; all knowledge of the

representations alleged to have been made by said Russack to complainants and his other creditors, was denied.

Affidavits were read in support of the bill and answers, unnecessary here to be set forth. After argument had, the Chancellor refused the injunction prayed for, and complainants excepted and assign said ruling as error.

VASON & DAVIS; JOSEPH ARMSTRONG; WARREN & ELY, for plaintiffs in error.

SMITH & JONES, for defendants.

WARNER, Chief Justice.

This was a bill filed by the complainants against the defendants, praying for an injunction to restrain the defendants from disposing of certain goods, described in the record, and for the appointment of a receiver to take charge of the goods. On the hearing before the presiding Judge, upon the bill and answers of the defendants, and the affidavits contained in the record, the injunction was refused; whereupon, the complainants excepted. The complainants sold the goods in controversy to one Russack, on time, and allege that he fraudulently sold and disposed of the same to the defendant, Greenfield, to defeat the complainants' debt, due for the purchase money of the goods, the defendant knowing the goods had not been paid for, and that the sale of the goods was a mere sham to defeat the payment of the complainants' debt, due them for the goods. The answers denied the allegations in the complainants' bill, and the question is, whether, under the facts of the case, as disclosed by the bill, answers of the defendants and affidavits, this Court should control and reverse the judgment of the Court below, in refusing to grant the injunction prayed for.

In *Cubbedge & Hazlehurst vs. Adams,* (42 *Georgia Reports,* 124,) this Court held and decided that, as a general rule, a Court of equity will not interfere at the instance of a general creditor before judgment, to set aside a *voluntary* conveyance of property, alleged to have been made for the purpose of defrauding creditors, and restrain, by injunction, the sale of prop-

erty held by the debtor under that voluntary conveyance as trustee, or in his own right, on the ground of fraud alleged in the execution of such voluntary conveyance without notice to the creditors. This being the general rule, do the facts disclosed by the record in this case take it out of that general rule, and which is the proper tribunal to decide upon the facts of the case in an application for an injunction, this Court, or the presiding Judge of the Court below? This Court has no original jurisdiction to grant, or refuse to grant an injunction in an equity cause; the original jurisdiction to grant, or to refuse to grant, an injunction, is vested by the Constitution and laws of this State in the Superior Courts, or in the several Judges thereof, as regulated by law. The presiding Judge in the Court below, in deciding upon the facts of the case disclosed by the record, in the exercise of his sound discretion, refused the injunction prayed for, and it would require a very strong case indeed, to authorize this Court to control and set aside the judgment of the Court below upon the facts. In the judgment of the Court below, *the facts* in this case did not take it out of the general rule which forbids a Court of equity to interfere at the instance of a general creditor before judgment, and grant the injunction prayed for, and we find no error in the exercise of the sound discretion of the Court, in refusing the injunction, which would authorize this Court to control it.

Let the judgment of the Court below be affirmed.